IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JUDAH ALVEY and TONI-REED ALVEY, husband and wife, | ) ) ) | No. 2:09-cv-02455-REJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | <u>OPINION AND ORDER</u> |
| SCOTTSDALE HEALTHCARE CORP., an Arizona corporation, | ) ) ) ) | |
| Defendant. | ) | |

Philip Jeffrey Nathanson
NATHANSON LAW FIRM
8765 E. Bell Road, Suite 101
Scottsdale, AZ 85260

  Attorney for Plaintiffs

Ronald J. Stolkin
FENNEMORE CRAIG PC
3003 N. Central Avenue, Suite 2600
Phoenix, AZ 85012-1627

  Attorney for Defendant

JONES, Judge:

Plaintiffs Judah Alvey ("plaintiff") and his wife, Toni-Reed Alvey, bring this civil rights action against plaintiff's former employer, defendant Scottsdale Healthcare Corp., alleging claims for sexual harassment, sexual discrimination, religious discrimination, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq*. Plaintiff has exhausted his remedies and received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").

Defendant now moves for summary judgment (# 45) on all of plaintiff's claims. I have thoroughly reviewed the parties' arguments and submissions, and for the reasons explained below grant defendant's motion in its entirety.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise specified. Relevant and material disputed facts are addressed as necessary below.

Plaintiff is a white Jewish male of Hispanic national origin. In August 2007, Gary Purcell, a Security Supervisor II and the Area Lead Officer for defendant's Osborn Campus, and William Self, the third shift Security Supervisor for the Osborn Campus, interviewed plaintiff for potential employment as a Hospital Security Officer with defendant. During plaintiff's interview, Purcell asked plaintiff if he was Jewish. Plaintiff's Controverting Statement of Facts ("P's SOF"), Exhibit 10, Deposition of William Self ("Self Depo."), p. 15. Purcell and Self hired plaintiff as a Hospital Security Officer on September 17, 2007.

Plaintiff first worked at defendant's Osborn Campus, where Self directly supervised him. Purcell supervised both Self and plaintiff. Declaration of Gary Purcell ("Purcell Dec."), ¶ 2. Plaintiff's interactions with Self are central to his sexual harassment and religious discrimination

2 - OPINION AND ORDER

and harassment claims. In his sexual harassment claim, plaintiff alleges that Self grabbed plaintiff's head and tried to force it into Self's crotch during a training session. Plaintiff's Complaint, ¶ 9. Purcell states that on November 30, 2007 plaintiff told him that this event occurred on October 22, 2007. Purcell Dec., ¶ 7. Plaintiff does not dispute that date, nor does he offer an alternative date on which the alleged incident might have occurred.

Self gave plaintiff several negative performance write-ups during his employment at the Osborn Campus, although plaintiff disputes that he performed unsatisfactorily. Self gave plaintiff his first write-up on November 18, 2007, for being 30 minutes late to a security shift meeting. On November 22, 2007, Self counseled plaintiff on the proper procedure for checking security on the first floor. On November 29, 2007, Self issued plaintiff a Verbal Performance Improvement Recommendation/Counseling form, which stated that plaintiff exhibited continuing difficulties properly completing department paperwork, following shift policies, responding to priority calls and properly using his security radio. The next day, November 30, plaintiff complained to Purcell that Self was hassling and harassing him because he was not one of the "good ol' boys" and was not like the other security officers. Purcell Dec., ¶ 5. At some unspecified point before plaintiff transferred to the Shea Campus in January 2008, Self told plaintiff that he (Self) had been a member of the "boot boys" or "black boot boys" in high school, which plaintiff understood to be an anti-Semitic group. Defendant's Statement of Facts ("D's SOF"), Exhibit 1 (Deposition of Judah Alvey) ("D's Alvey Depo.")), p. 85.

On December 13, 2007, Self completed a Staff Member Performance Appraisal of plaintiff after his first 90 days on the job. In the appraisal, Self gave plaintiff an overall rating of "fully competent," or a "3" out of a possible "4." Declaration of William Self ("Self Dec."),

3 - OPINION AND ORDER

Exhibit E (Staff Member Performance Appraisal), p. 1. In the "staff member comment" portion of the appraisal, plaintiff reviewed Self positively,[1] but explains that he felt intimidated while writing his comment because Self was "practically standing over [him]." P's SOF, Exhibit 1 (Deposition of Judah Alvey (P's Alvey Depo.")), p. 5.[2]

On January 10, 2008, Self issued plaintiff a "Verbal Counseling/Warning" after plaintiff was dispatched to one area and allegedly responded to a different area. Self Dec., ¶ 9, Exhibit F (Verbal Counseling Warning). On January 11, 2008, plaintiff gave Self a written response in which he contested the warning, and asked Self to read and sign it. Self told him that he would not sign it because he did not agree with it.

On January 23, 2008, in relation to the alleged "crotch incident," plaintiff filed assault charges against Self with the Scottsdale Police Department. Defendant alleges, and plaintiff does not dispute, that around this time Purcell informed a man named "Smith," presumably a person with managerial authority who worked for defendant,[3] that he thought Self and plaintiff should be separated. Purcell Dec., ¶ 12.

After consulting with Purcell and Frank Kroll, the Area Lead Officer at the Shea Campus, Smith decided to transfer plaintiff from the Osborn Campus to the Shea Campus and transfer another officer from the Shea Campus to the Osborn Campus. Id. Although the transfer was not

---

[1] Plaintiff wrote: "[Self] is a great supervisor and constantly encouraged me to pursue excellence. He has never made me feel that I couldn't achieve my goals. It has/is a pleasure & privilege to serve on the hospital security team." Staff Member Performance Appraisal, p. 5.

[2] The page number is of the exhibit, not the deposition.

[3] No party identifies who "Smith" is and what his position was.

4 - OPINION AND ORDER

official until February 3, 2008, plaintiff began working at the Shea Campus on January 22, 2008. Plaintiff's transfer did not change his wages or hours, although plaintiff states that Self told him that it was a disciplinary transfer. D's Alvey Depo., pp. 85-86. After the transfer, plaintiff's supervisors were Kroll and Rowan Sutton, the Security Supervisor at the Shea Campus.

On January 25, 2008, plaintiff met with Carol Lynn Hill, the then-Manager of Employee Relations at the Shea Campus. Plaintiff asserts that during the meeting he made harassment and discrimination claims against Self. P's SOF, Supplemental Facts, ¶ 8; Exhibit 7 (Alvey Events), p. 2. Hill states that plaintiff showed up at her office unannounced and that she did not believe at the time that plaintiff was making a complaint or asking her to take any action. Declaration of Carol Lynn Hill, ¶ 3.

Between January 2008 and July 2008, no incidents took place. Between August 2008 and November 2008, however, plaintiff was involved in several incidents with co-workers. On August 22, 2008, plaintiff got into an argument with another security officer, Brian Krek. During this argument, Krek allegedly made several profane statements to plaintiff and plaintiff then put his finger on Krek's chest. P's SOF, Exhibit 6 (Dispatch Office Incident Memorandum), pp. 1-2. The parties dispute whether plaintiff merely touched Krek or whether the contact was forceful or threatening in nature. In late September 2008, plaintiff claimed that co-worker Villa gave him an improper smoking citation.

Meanwhile, on September 8, 2008 plaintiff filed a charge of racial and religious harassment and discrimination as well as unlawful retaliation with the EEOC. Defendant contends that it received a copy of the filing on September 17 or 18, 2008.[4]

On November 20, 2008, plaintiff met with John Donahue of Human Resources ("HR") and Senior HR Consultant Shannon Wainman concerning his participation in department team-building courses. Plaintiff states that Donahue told him "[i]f you don't like what's going on around her[e], why don't you go work somewhere else." Alvey Events, p. 3; D's Alvey Depo., pp. 146-47.

On December 1, 2008, plaintiff and Villa engaged in a heated argument after they both responded to an important dispatch call involving a possible child abduction (referred to in the briefs as the "code pink incident"). After Villa notified Sutton via radio that he and plaintiff were engaged in a heated argument, Sutton ordered them into his office to discuss the dispute. Plaintiff and Villa continued to argue and speak over one another, so Sutton determined the meeting was not productive and ended it. Plaintiff walked out of Sutton's office but returned in a few seconds and said something to Villa that Sutton interpreted as a threat.[5] Sutton twice ordered plaintiff to leave the office. Sutton then sought Kroll's guidance on what should be done. Kroll instructed Sutton to send plaintiff home and to have him report to Kroll the following morning.

---

[4] Defendant mentions both dates. Compare D's SOF, ¶ 39 (September 17), with D's SOF, Exhibit 4, ¶ 6 (September 18).

[5] Plaintiff states that he said: "If I ever saw him driving around with the janitorial girl in the car and responding to an incident, that I would be reporting him." P's Alvey Depo., p. 92. Sutton, however, stated in a post-incident report that he heard plaintiff say: "If I ever see you on the street driving your car." Declaration of Frank Kroll, ¶ 8, Exhibit C (Rowan Sutton Security Services Report), p. 2.

On December 2, 2008, plaintiff met with Kroll and Martin Whitfield, a senior security officer, regarding the incident with Villa. Plaintiff was placed on paid suspension pending an investigation. That same day John Donahue made the decision to terminate plaintiff's employment for threatening Villa. Plaintiff was terminated on December 8, 2008.

Plaintiff unsuccessfully appealed his termination through defendant's internal appeal process. Plaintiff then filed this action in the Arizona federal district court on March 18, 2011.

**STANDARD**

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

**DISCUSSION**

Defendant moves for summary judgment on all of plaintiff's claims, contending that (1) certain of plaintiff's claims are barred by a 180-day statute of limitations; and (2) plaintiff cannot establish that he was subjected to actionable sexual harassment, sexual discrimination, religious discrimination, or retaliation. Plaintiff, in turn, contends that the limitations period is 300, not 180 days; that the limitations period does not apply under a continuing violations theory; and there are sufficient factual disputes in relation to his claims to preclude summary judgment.

I.  Statute of Limitations

Title VII establishes two general time limitation periods within which a plaintiff must file an administrative charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081-82 (9th Cir. 2006). Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of alleged discrimination. MacDonald, 457 F.3d at 1081-82. The limitations period is extended to 300 days if a plaintiff "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1).

Defendant contends that the 180-day limitation period applies to plaintiff's discrimination claims because he did not initially institute proceedings with the Arizona Civil Rights Division ("ACRD"). That argument does not take into account the effect of the work-sharing agreement in place between the EEOC and the ACRD, which neither party discusses. See, e.g., E.E.O.C. v. Commercial Office Products Co., 486 U.S. 107 (1988), for a general discussion of work-sharing agreements.

In this case, plaintiff admits that he did not file a charge of discrimination with the ACRD. He also concedes that alleged incidents occurring up through the end of October 2007

8 - OPINION AND ORDER

are time-barred for purposes of liability. See D's SOF, ¶¶ 70, 76, and P's SOF, ¶¶ 70, 76. Defendant, in turn, states that it is "using the 300 day time period for purposes of this Motion," Defendant's Motion for Summary Judgment, p. 11 n.4; consequently this court will consider events within the 300-day time period for purposes of liability, i.e., events occurring after November 13, 2007. And as plaintiff correctly points out, time-barred events may be considered as evidence to support timely events. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002).[6]

II. Sexual Harassment, Hostile Sexual Work Environment, and Sex Discrimination Claims

    a. Sexual Harassment

Plaintiff contends that Self grabbed his head and tried to force it into Self's crotch during a training session, purportedly on October 22, 2007. Defendant has submitted evidence that Self and plaintiff did not work together between October 19 and October 31, 2007, which plaintiff has not disputed. See D's SOF ¶ 13; P's SOF, ¶ 13; see also Purcell Dec., ¶ 8, Exhibit B (plaintiff's time records), and Exhibit C (Self's time records). Assuming, however, that the event happened at all, it is time-barred for purposes of liability. Summary judgment on this claim is, therefore, appropriate.

    b. Hostile Work Environment

Plaintiff also alleges a claim of hostile work environment based on the so-called "crotch event." Claims based on a hostile environment "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls

---

[6] I find that plaintiff's "continuing violation" theory lacks factual support sufficient to establish the necessary company-wide, systematic, discriminatory practice. See Lyons v. England, 307 F.3d 1092, 1107 (9th Cir. 2002).

9 - OPINION AND ORDER

within the time period." National R.R. Passenger Corp., 536 U.S. at 127. Plaintiff describes other conflicts he had with Self, yet he fails to offer evidence of any other incident of sexual harassment. Because it appears that plaintiff's hostile work environment sexual harassment claim is based, at best, on an isolated incident that may or may not have occurred and that is, in any event, time-barred, summary judgment on this claim is appropriate.

    c.    Sex Discrimination

Plaintiff also asserts, based on an alleged statement by a female officer, Officer Schroeder, that he was discriminated against based on sex because similarly situated females were treated more favorably than he was treated. Plaintiff admits that the statement is hearsay,[7] and has made no effort to explain how or why that statement would be admissible at trial. See Fed. R. Civ. P. 56, 2010 Amendments, Advisory Committee Notes ("burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated"). Plaintiff concedes that other than the inadmissible evidence concerning Officer Schroeder, he makes no claim that any other women received more favorable treatment than he because of gender or sex. D's Alvey Depo., p. 122. Consequently, summary judgment on this claim is appropriate.

III.    Religious Discrimination

Plaintiff points to only two incidents to support his claim of religious discrimination. The first, which is time-barred for purposes of liability, is that during his job interview, Purcell asked him if he was Jewish. Of course, plaintiff was in fact hired for the job.

---

[7]    See D's SOF, ¶¶ 72-74; P's SOF, ¶¶ 72-74.

The second incident is that at some point, Self allegedly told plaintiff that in high school, he had been one of the "black boot" or "boot" boys. D's Alvey Depo., p. 85. From that, plaintiff believed that Self "hated [him] because [he] was Jewish." Id.

Even accepting both incidents as timely, plaintiff offers nothing more in support of his religious discrimination claim. In particular, plaintiff has failed to present any evidence, as part of his *prima facie* case, that similarly situated non-Jewish employees were treated more favorably than he was treated. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Indeed, a fair review of the record in this case reveals no evidence, let alone a scintilla of evidence, that plaintiff was subjected to an adverse employment action because he is Jewish. Summary judgment is, therefore, appropriate on this claim.

IV. Retaliation

Plaintiff contends that he was terminated in retaliation for having filed a complaint with the EEOC on September 8, 2008, and for making internal discrimination complaints to HR in January 2008. See Complaint, ¶¶ 11-14; Plaintiff's Opposition to Defendant's Motion, p. 6.

Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice. Retaliatory discharge claims follow the same burden-shifting framework described in McDonnell Douglas: To establish a *prima facie* case of retaliation, plaintiff must prove (1) that he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007). The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse

action.  Id.  If a plaintiff establishes a *prima facie* case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir.1996).  If the employer provides a legitimate explanation for the challenged decision, plaintiff must show that defendants' explanation is merely a pretext for impermissible discrimination.  See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

It is beyond dispute that plaintiff's complaints about perceived discrimination qualify as protected activity, and that his termination qualifies as an adverse employment action.

With respect to causation, plaintiff relies on the temporal proximity between his complaint to the EEOC on September 8, 2008, which defendant received on September 17 or 18, 2008, and his termination on December 8, 2008.  In the Ninth Circuit, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002):

> But timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.

Id. (citations and internal quotations omitted).

In this case, there is a gap of less than three months between September 17 or 18, when defendant received plaintiff's EEOC charge, and December 8, 2008, when he was terminated.  Under Ninth circuit precedent, that timing may be sufficient to give rise to an inference of causation and establish plaintiff's *prima facie* case.

The court need not make a definitive ruling on timing, however, because even if plaintiff has made his *prima facie* case, his claim does not survive under McDonnell Douglas because he

12 - OPINION AND ORDER

has failed to carry his burden of demonstrating pretext. See Villiarimo, 281 F.3d at 1065 n.10. Defendant has submitted evidence of a legitimate, non-retaliatory reason for plaintiff's discharge; specifically, plaintiff's intervening argument with and threatening behavior toward his co-worker Villa, which took place in the presence of plaintiff's supervisor one day before Donahue made the decision to terminate him. Plaintiff has not offered any evidence to show that defendant did not believe its reason for termination, did not believe plaintiff's behavior was threatening, or that the reasons given are unworthy of credence. As explained in Villiarimo, at summary judgment, a court "need not draw *all* possible inferences in [plaintiff's] favor, but only all *reasonable* ones." Villiarimo, 281 F.3d at 1065 n.10 (emphasis in original; citation omitted).

I conclude that plaintiff has failed to produce evidence sufficient to allow a reasonable fact finder to find that defendant's proffered reason for plaintiff's termination was a pretext for unlawful retaliation. Accordingly, summary judgment on the retaliation claim is appropriate.

## CONCLUSION

Defendants' motion for summary judgment (# 45) is GRANTED on all claims. Any other pending motions are denied as moot, and this action is dismissed with prejudice.

DATED this 24th day of August, 2011.

    /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

13 - OPINION AND ORDER